UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN GUILLERMO NARANJO-HENAO,<br>also known as "Diego,"<br><br>Defendant. | CRIMINAL NO.: 18-CR-131 (RDM) |

**MOTION FOR A COMPLEX CASE DESIGNATION AND TO EXCLUDE TIME
UNDER THE SPEEDY TRIAL ACT**

I.   **INTRODUCTION**

The United States respectfully submits this motion, seeking a complex case designation and to exclude time from the calculation of the date by which the above-named Defendant must be tried pursuant to the provisions of the Speedy Trial Act, 18 U.S.C. § 3161. The Speedy Trial Act authorizes the Court to exclude any period of delay resulting from a continuance of the trial date granted for the ends of justice because of the complexity of the case. *See* 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii). Additionally, the Speedy Trial Act states that a period of delay, not to exceed one year, shall be excluded where the government has made an official request for foreign evidence. *See* 18 U.S.C. § 3161(h)(8).

II.   **PROCEDURAL HISTORY AND BACKGROUND**

The Indictment in this case is the product of an extensive, long-term and ongoing investigation conducted by the Drug Enforcement Administration ("DEA") into the drug trafficking activities of the Cartel de Jalisco Nueva Generacion ("CJNG"). The investigation has revealed that the Defendant, a Colombian national, was a large-scale cocaine trafficker responsible for trafficking cocaine into Mexico from other Latin American countries, for their ultimate

1

importation into the United States.

On May 3, 2018, a federal grand jury sitting in the District of Columbia returned and filed an indictment against the Defendant, charging him with conspiracy to distribute five kilograms or more of cocaine, a Schedule II controlled substance, intending, knowing, and having reasonable cause to believe that the cocaine will be unlawfully imported into the United States, and aiding and abetting that offense, in violation of 21 U.S.C. §§ 959(a), 960(a)(3), 960(b)(1)(B)(ii), and 963, and 18 U.S.C. § 2.

Based on this Indictment, the United States District Court for the District of Columbia issued a warrant for the Defendant's arrest, and the Defendant was arrested by Colombian authorities in Colombia on April 18, 2023. Following his arrest, the Defendant was extradited to the District of Columbia on September 12, 2024. The Defendant initially appeared on September 13, 2024, before U.S. Magistrate Judge G. Michael Harvey. The Defendant conceded detention, and Magistrate Judge Harvey ordered that the Defendant remain detained.

On October 28, 2024, the government provided defense counsel with initial discovery of over 300 pages of documents, largely consisting of transcripts of recorded calls and reports of Defendant's interviews with DEA agents in Quito, Ecuador, in May 2019. On January 8, 2025, the government provided supplemental discovery, which consisted of dozens of audio and video recordings, photographs, DEA interview notes, DEA reports, and a Mutual Legal Assistance Treaty (hereinafter "MLAT") response from the Government of Ecuador concerning its parallel investigation which resulted in the seizure of approximately 70 kilograms of cocaine and the Defendant's arrest on March 30, 2018. The government is continuing its review to identify additional materials that need to be disclosed to comply with its Rule 16 obligations. *See* Fed. R. Crim. P. Rule 16.

The volume of discovery will grow substantially. After learning about the nature and scope of the evidence possessed by Ecuadorian authorities based on their response to the original MLAT request—such as forensic extractions from multiple electronic devices seized from the Defendant and his co-conspirators—the government is in the process of submitting a supplemental MLAT request to the Government of Ecuador for additional evidence that is responsive to the original request. The anticipated response to the supplemental MLAT request will include voluminous discoverable materials, such as forensic extractions from multiple cellular devices and SIM cards seized from the Defendant and his co-conspirators, digital photographs, call record analysis reports, arrest warrants, fingerprint reports, surveillance video footage, and possible wiretap records.

The government expects that most, if not all, of these materials will be in Spanish and will therefore require translation and certification for use at trial.

### III.    LEGAL ANALYSIS

#### A.    <u>A Trial Date Should be Set Outside the Normal Speedy Trial Calculation Due to the Complexity of This Case</u>

The government moves for a complex case designation pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii), due to the scope and complexity of the international narcotics trafficking conspiracy charged, the volume of evidence, the existence of foreign evidence that will require translation from Spanish to English for use at trial, and to allow the parties a reasonable amount of time to prepare for trial.

The Speedy Trial Act authorizes the Court to effectively toll the seventy-day trial period for any period of time by granting a "continuance on the basis of [the Court's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the

3

defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In determining whether to grant a continuance, the Court must consider, among other factors:

> [w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions or fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits [prescribed by the statute].

18 U.S.C. § 3161(h)(7)(B)(ii).

The Court has broad discretion to grant an exclusion of time when it finds that the case's complexity requires that counsel have additional time to prepare in order to ensure a fair trial. *See United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *Zedner v. United States*, 547 U.S. 489, 498 (2006) ("[18 U.S.C. § 3161(h)(7)(A)] gives the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs."). The Court must make findings on the record to support the determination that a case should be designated as an unusual or complex case that justifies a continuance excludable from Speedy Trial Act calculations. *See Zedner*, 547 U.S. at 508 ("[I]f a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted."); *see also United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008) ("This provision demands on-the-record findings and specifies in some detail certain factors that a judge must consider in making those findings.").

This District has designated cases as complex based upon the large volume of discovery, the complexity of the charged conspiracy, the volume of Spanish-language documents that must be translated into English, and foreign witnesses requiring international travel arrangements. For example, in *United States v. Archbold-Manner,* the court found the case to be complex largely based on 10,000 Spanish-language documents that were not translated and too voluminous for defense counsel to review before the scheduled trial date, extensive wiretap evidence that must be

4

transcribed and translated from Spanish and Patois into English, physical evidence that was tested by foreign chemists, and the large number of defendants requiring parsing documentary evidence for each. 577 F. Supp. 2d 291, 292 (D.D.C. 2008). This District has also made a complex case designation where two co-defendants were charged with conspiracy to traffic narcotics into the United States, in part due to the foreign language documents and conversations on wiretaps that required translation to be of value to English speakers. *United States v. Zaitar*, 858 F. Supp. 2d 103, 109 (D.D.C. 2012).

In *United States v. Parga-Rivas*, an international drug conspiracy case involving three co-defendants, the district court noted the following in granting the government's motion for a complex case designation:

> The evidence in this case is in one or more foreign languages and both written and oral (wiretapped) evidence must be translated into English before it can be of use to either the defense or the prosecution. Witnesses and other pieces of evidence must be brought to the United States for trial, which will require significant international arrangements. It is entirely unreasonable to expect defense counsel to absorb the evidence, share it with his client, consider it so as to provide effective advice, and then determine with Mr. Parga-Rivas how they want to proceed all within seventy days. It is entirely unreasonable, in fact, to expect the Government to produce fully translated copies of the extensive evidence within seventy days for the defense to even begin its consideration and evaluation. This conclusion is within the normal precedent for application of this provision of the Speedy Trial Act.

689 F.Supp.2d 25, 28 (D.D.C. 2009) (internal citations omitted).

Further, under 18 U.S.C. § 3161(h)(8)(A), the court may, on its own motion, grant a continuance that has the effect of tolling the speedy trial clock upon finding that the "ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial." *United States v. Shaw,* 510 F. Supp. 2d 148, 152 (D.D.C. 2007).

In the instant case, the charged conspiracy is a complex one. While the Indictment charged only two defendants for their criminal activities during approximately three months, this case

involves an international narcotics trafficking conspiracy spanning Colombia, Ecuador, Mexico, and the United States. In connection with carrying out the charged conspiracy, the Defendant, a Colombian national operating in Ecuador who had significant connections to Colombian cocaine sources of supply, met with Mexican buyers over the course of several months in order to procure a 600-kilogram cocaine shipment from Colombia, through Ecuador, to Mexico, while knowing that the cocaine was destined to the United States. In early March 2018, the Defendant and his co-conspirators were making final preparations for a 50-kilogram sample load to be transported in a sealed container aboard a ship from Guayaquil, Ecuador into Manzanillo, Mexico. While in Ecuador, and before the embarkation of the sample load, the Defendant was arrested by Ecuadorian authorities as the result of a parallel investigation, and approximately 70 kilograms of cocaine and other drugs were seized from the Defendant.

Consistent with the complexity of this transnational drug trafficking case, the evidence produced to date is already voluminous, consisting of several hundred pages of transcripts and reports; dozens of audio and video recordings, photographs, and records provided by the Government of Ecuador in response to the government's MLAT request. The foreign evidence stems from a parallel investigation conducted by the Ecuadorian authorities that led to the arrest of the Defendant and the cocaine seizure in March 2018. As it stands now, the foreign evidence includes over 400 pages of law enforcement reports, phone records, call history analysis, photographs, and reports of forensic examination performed by Ecuador's Forensic Science Laboratory on the fourteen cellular devices and SIM cards seized from the Defendant and his co-conspirators.

Critically, based on the review of the initial MLAT response, the government has identified a substantial amount of additional foreign evidence—for example, the original MLAT response

did not include any electronic data extracted from the devices seized from the Defendant and his co-conspirators—and is in the process of obtaining it from Ecuador through a supplemental MLAT request. In addition to forensic extractions from the seized devices, the anticipated response to the supplemental MLAT request will likely include additional reports, arrest warrants, surveillance photographs and footage, and possible wiretap records, all related to Ecuadorian authorities' parallel investigation against the Defendant. Once received, the evidence must be translated into English before it can be of use to the government and the Defendant.

To introduce the foreign evidence at trial, the government plans to call multiple Ecuadorian law enforcement witnesses to testify about the Defendant's criminal acts and to authenticate relevant evidence derived from the 2018 arrest of the Defendant and the seizure of 70 kilograms of cocaine. Calling these foreign law enforcement witnesses will require substantial diplomatic efforts. The logistic process alone of arranging passports, visas, and travel for these foreign witnesses will take several months.

In sum, the Court should grant an exclusion of time because the complexity of the case, the volume of evidence, and the logistical challenges all require that the government and the Defendant have additional time to prepare to ensure a fair trial.

### B.     Time Under the Speedy Trial Act Should Also Be Excluded Based Upon the Government's Official Request for Foreign Evidence

The Speedy Trial Act states that a period of delay shall be excluded in computing the time within which the trial must commence under the following circumstance:

> any period of delay, not to exceed one year, ordered by a district court upon an application of a party and a finding by a preponderance of the evidence that an official request, as defined in section 3992 of this title, has been made for evidence of any such offense and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was in such foreign country.

18 U.S.C. § 3161(h)(8); *see also Zaitar*, 858 F. Supp. 2d at 110 (concluding that "[t]ime is properly excluded under the Speedy Trial Act if an 'official request' for evidence has been made to a foreign country"); *United States v. Serna*, 630 F. Supp. 779, 783-84 (S.D.N.Y. 1986) (finding the government was entitled to continued exclusion of time not to exceed one year under the Speedy Trial Act while the government made a diligent and good faith effort to obtain evidence gathered by the Spanish police).

In this case, the initial MLAT request was presented to the Government of Ecuador in April 2023, requesting, among other things, "copies of evidence and information gathered in the Ecuadorian investigations relating to NARANJO-HENAO[.]" The Government of Ecuador responded in July 2023 and provided law enforcement reports documenting the March 30, 2018, execution of search warrants by Ecuadorian authorities at two apartments in Guayaquil linked to the Defendant and his co-conspirators. The response also included reports of forensic examination of fourteen cellular devices and SIM cards seized by Ecuadorian authorities from the Defendant and his co-conspirators.

After the response to the initial MLAT request was translated and reviewed, the government determined that additional evidence responsive to the initial MLAT request was not provided. For example, based on the reports of forensic examination prepared by Ecuador's Forensic Science Laboratory, at least five of the fourteen cellular devices and SIM cards were successfully exploited. Therefore, the corresponding data extractions should exist, but were not included in the original MLAT response. The government is in the process of transmitting a supplemental MLAT request to the Government of Ecuador for additional evidence that was responsive to the original MLAT request. As previously discussed, the government anticipates the response to the supplemental MLAT request to be voluminous.

The government's initial MLAT request to Ecuador, together with the supplemental request that will be transmitted imminently, satisfy the definition for an "official request" under 18 U.S.C. § 3292(d), in that they are "request[s] under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country." Therefore, pursuant to 18 U.S.C. § 3161(h)(8), the government requests to exclude any period of delay, not to exceed one year, from the time within which the trial must commence under the Speedy Trial Act, until it receives the supplemental records from the Ecuadorian government.

## IV.   CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court grant the instant motion and make a finding designating this case a complex case pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and (h)(7)(B)(ii), and exclude such period of delay; and exclude any period of delay, not to exceed one year, as the government has made official requests for foreign evidence pursuant to 18 U.S.C. § 3161(h)(8).

Respectfully submitted this 17th day of January, 2025.

//
//
//
//
//
//
//
//
//

                Marlon Cobar
                Chief
                Narcotic and Dangerous Drug Section
                Criminal Division
                U.S. Department of Justice

By:    */s/Douglas Meisel*
         Douglas Meisel, Trial Attorney
         Lernik Begian, Trial Attorney
         Narcotic and Dangerous Drug Section
         Criminal Division
         U. S. Department of Justice
         145 N Street, Northeast
         East Wing, Second Floor
         Washington, D.C. 20530
         Douglas.Meisel@usdoj.gov
         (202) 598-2281

## **CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing was sent via ECF, to counsel of record for the defendant, this 17th day of January, 2025.

        By:  _/s/Douglas Meisel_
            Douglas Meisel
            Trial Attorney
            Narcotic and Dangerous Drug Section
            Criminal Division
            U.S. Department of Justice