UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN NARANJO HENAO,<br>　　　　　　　Defendant. | Crim. Case No. 18-cr-00131 (RDM) |

MOTION TO SUPPRESS STATEMENTS

COMES NOW Defendant, Juan Naranjo Henao (hereinafter Mr. Naranjo), through undersigned counsel, and files this motion to suppress any statements attributable to Mr. Naranjo. Fed. R. Crim. P. 12(b).

*Background*

Mr. Naranjo was arrested in March of 2018 in Ecuador, by Ecuadoran law enforcement. The Ecuadorian arrest resulted in a criminal case that was later dismissed by Ecuadoran prosecutors. Since 2018 to the present, no further legal action against Mr. Naranjo has been taken by Ecuador. However, a few short weeks after his 2018 arrest in Ecuador, and while still held by Ecuadorean authorities, on May 3, 2018, a grand jury in the District of Columbia issued an indictment against Mr. Naranjo and an unknown co-defendant based upon alleged conduct in Ecuador dating from January to March of 2018.

Given representations by government counsel, and case discovery thus far, defense counsel expects the government will introduce at trial evidence of calls and

messaging to support their case. However, the defense is not aware of any *statements* made by Mr. Naranjo in the Spring of 2018 to Ecuadorian authorities, or U.S. authorities since that time.

However, as part of the discovery disclosed by the government, undersigned counsel received a document[1] from the government that appears to memorialize a meeting between Mr. Naranjo and government agents. This "document" may call into question whether the government will introduce a "statement" attributable to Mr. Naranjo. Hence the need to protect, and assert, Mr. Naranjo's constitutionally protected rights against an illegally obtained "statement."

The "document" in question appears to be law enforcement notes and describes a meeting that purportedly took place in Ecuador and more than a year after Mr. Naranjo's arrest in March of 2018. It is dated May 21, 2019, and describes a meeting with Mr. Naranjo and U.S. government agents. It references discussions with Mr. Naranjo as well as describes background on U.S. law enforcement investigations and targets. Strangely, the document is not memorialized on a standard government form (*e.g.* DEA-7 or FBI-302). Rather, the document presents itself as a standard document, such as a common word-processing program/document, with no government heading.

---

[1] This motion is filed after news of the PACER filing system being compromised by a significant "hacking" incident. See https://www.politico.com/news/2025/08/06/federal-court-filing-system-pacer-hack. The incident led Courts to suspend using PACER for sensitive, or "sealed," material. Because of the nature of the document in question, undersigned counsel will contact chambers for advice on how best to provide the Court with a copy of the document in question.

Given the uncertainty of whether this document represents agent notes, a formal report, or memorialization of a statement, Mr. Naranjo files this motion to suppress statements and shield against any use of this document as a "defendant statement" for introduction at trial.

*Authority & Argument*

A defendant's statement made in custody during interrogation is admissible as evidence at a criminal trial only if law enforcement told the defendant of the right to remain silent and the right to speak with an attorney. *Miranda v. Arizona*, 384 U.S. 436 (1966). "*Miranda* warnings are required where a suspect in custody is subjected to interrogation." *United States v. Vinton*, 594 F.3d 14, 26 (D.C. Cir. 2010) (quotation marks omitted). "Failure to administer *Miranda* warnings creates a presumption of compulsion." *Oregon v. Elstad*, 470 U.S. 298, 307 (1985). "Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*." *Id.*

While *Miranda* itself provides that a defendant's statements can be used against him if he "voluntarily, knowingly and intelligently" waives his rights – there are limits. *Miranda*, 384 U.S. at 444. "Whether such a waiver occurred has generally been thought to depend on two "distinct" questions: first, was the waiver "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and, second, was the waiver "made with a full awareness of both the nature of the right being abandoned and the consequences of

the decision to abandon it." *United States v. Bradshaw*, 935 F.2d 295, 298 (D.C. Cir. 1991) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "Only if both questions are answered affirmatively 'may a court properly conclude that the *Miranda* rights have been waived.'" *Id.*

"[A] heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda*, 384 U.S. at 475. Courts determine the validity of a *Miranda* waiver by looking at the totality of the circumstances. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

As a threshold issue, the allegation of a "statement," let alone, a statement that would satisfy *Miranda* and trial admissibility, is highly suspect given the facts of Mr. Naranjo's case. First consider, that the May 2019 meeting was more than one-year after the March 2018 arrest of Mr. Naranjo in Ecuador, the criminal case against Mr. Naranjo in Ecuador, the investigation by Ecuadoran law enforcement and prosecutors, and the dismissal of the case against Mr. Naranjo by Ecuadoran prosecutors. Moreover, at the time of the meeting in May of 2019, Mr. Naranjo had been indicted, he was a fugitive from U.S. justice. These facts create another carve-out of the *Miranda* line of cases.

4

"*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 300–02 (1980). This is where Mr. Naranjo's case facts, and specifically, the "meeting" that occurred in May 2019 rest.

It is incredible that government agents would conduct an interview, or interrogation, or any conversation with a person that has been indicted in a U.S. court and subject to arrest. Moreover, it would be the height of pressure to announce to a person that they are the subject of an international manhunt, indicted in the U.S., and then offered lunch and open discussions about drug-trafficking. All these factors call into question what took place in May of 2019, and how the document in question is interpreted.

WHEREFORE, Mr. Naranjo respectfully requests that this Honorable Court grant his motion preclude any use of the document in question being used as a "statement" by Mr. Naranjo and used against him at trial.

Filed this 11th day of August 2025.

       Respectfully submitted,

       RETURETA & WASSEM, P.L.L.C.

By:_____
       Manuel J. Retureta, Esq.
       District of Columbia Bar #430006
       300 New Jersey Ave., NW, Suite 300
       Washington, D.C. 20001
       202-450-6119
       MJR@RETURETAWASSEM.COM

CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing filing was served upon counsel for all parties via electronic mail on this 11th day of August 2025.

By:_____
    Manuel J. Retureta, Esq.